UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN HADEN,

    Plaintiff,

v.

J. ESPINOZA, et al.,

    Defendants.

Case No. 14-cv-05398-SI

**ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS**

Re: Dkt. No. 19

## INTRODUCTION

Steven Haden filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. The court screened the complaint and found that it stated a cognizable claim against two defendants for deliberate indifference to medical needs. Defendants have moved for summary judgment against Haden. Haden has not filed an opposition to the motion. For the reasons discussed below, the motion will be granted and judgment entered in defendants' favor.

## BACKGROUND

The claim remaining for adjudication concerns two prison doctors' refusal to renew Haden's prescription for Konsyl (psyllium) and refusal to refer him to a specialist for further medical evaluation. The following facts are undisputed unless otherwise noted:

Steven Haden is a prisoner of the State of California, in the custody of the California Department of Corrections and Rehabilitations. Haden is housed in San Quentin State Prison. The remaining defendants are Dr. J. Espinoza, who saw Haden for two chronic care medical appointments in 2013, and Dr. E. Tootell, the chief medical executive at San Quentin.

The events and omissions giving rise to the complaint occurred at San Quentin State Prison from March 2013 through September 2013.

Haden had chronic intermittent constipation for many years. A variety of medications had been prescribed for him over the years, and he had been advised to increase the fiber in his diet, to increase his water intake and to exercise. According to Dr. Tootell, the treatment for chronic constipation generally is "to prescribe more fiber and water in the diet, and exercise by the patient. Medications such as laxatives and stool softeners also may be prescribed." Docket No. 19-1 at 2.

On March 22, 2013, Dr. Espinoza saw Haden for a chronic care appointment, which included consideration of his chronic constipation.[1] At that time, Haden was taking three medicines for his constipation: lactulose, magnesium oxide, and Konsyl (psyllium). Docket No. 19-4 at 32. Upon examining Haden, Dr. Espinoza wrote the following assessment and plan: "We will continue the current regimen. It is doing better now even though he is still requiring the same medications. Previously, they were thinking about sending him to GI for consult, but that is not needed now. We will continue current medications and follow." Docket No. 19-4 at 32.

On March 23, 2013, Dr. Tootell approved Dr. Espinoza's non-formulary[2] drug request for magnesium oxide for Haden's constipation for one more year.

On June 19, 2013, Haden's prescription for Konsyl (psyllium) expired. *Id*. at 33.

On September 5, 2013, Dr. Espinoza saw Haden for another chronic care appointment. Because his prescription for Konsyl had expired more than two months earlier, Haden was only taking lactulose and magnesium oxide to treat his constipation. *Id*. at 18. During the exam, Haden showed extreme discontent that Konsyl was no longer being prescribed for him. *Id*. Despite his discontent, Haden showed no symptoms of constipation (e.g., Dr. Espinoza noted that he had a soft, non-tender and non-distended abdomen) and he told Dr. Espinoza that he had bowel movements regularly, sometimes "two times a day." *Id*. Dr. Espinoza wrote that Haden "actually does not seem to be constipated. I tried to explain to him that he is having bowel movements just

---

[1] Haden had three chronic medical problems listed for his chronic care appointments in 2013: hepatitis C, history of mental illness, and chronic constipation.

[2] Non-formulary drugs are not on the prison pharmacy list. Docket No. 19 at 4.

about every day and sometimes more than once a day and does not quite meet the definition of constipation at this time and I also tried to reassure him that he does not have to have bowel movements multiple times a day." Docket No. 19-4 at 18. She noted that Haden had "been out of the Konsyl for a few months and is currently having regular bowel movements." *Id*. During this evaluation, Dr. Espinoza ruled out the need for additional Konsyl or a colonoscopy based on the lack of any "significant symptoms consistent with severe constipation," but left the possibility of a future colonoscopy open, as a potential option should such symptoms develop. *Id*. At the September 5, 2013 appointment, Dr. Espinoza explained that Konsyl was non-formulary, and she offered to put in the paperwork to request the non-formulary Konsyl but thought there was a good chance it would not be granted. *Id*. The request was denied on September 6, 2013 by Dr. Pratt, the acting chief medical officer, because Haden's condition had improved without the Konsyl. *Id.* at 17.[3]

In May 2014, Dr. Tootell approved Dr. Pachynski's non-formulary drug request for Citrucel, a laxative, for Haden's chronic constipation.

In September 2014, Dr. Pachynski noted that Haden was complaining of nausea and having multiple bowel movements a day with hard and small stools. She told Haden she would make a referral to the GI specialist. Docket No. 19-3 at 24. A colonoscopy was done on Haden on June 12, 2015, and showed a normal colon. The doctor who performed the colonoscopy recommended increased fiber and water intake for constipation, and a repeat colonoscopy in ten years. Docket No. 19-2 at 51-53.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court will grant summary judgment "against a party who fails to

---

[3] The reasons for approval of use of a non-formulary drug in the prison were: (a) treatment failures with medications listed in the formulary; (b) documented allergy, side effect, or adverse reaction that prevent the use of a formulary medication; and (c) certain exceptions for new medications that may save a life or prevent significant morbidity. Docket No. 19-1 at 4.

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted.) The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, Haden's complaint was made under penalty of perjury and is considered as evidence in evaluating the motion for summary judgment.

**DISCUSSION**

Deliberate indifference to an inmate's serious medical needs amounts to the cruel and unusual punishment prohibited by the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97,

4

104 (1976); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The defendants argue that Haden does not meet the subjective, or deliberate indifference, prong of the Eighth Amendment test. A defendant is "deliberately indifferent" if she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837. The defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but she "must also draw the inference." *Id*. If the defendant should have been aware of the risk, but was not, then she has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). "[T]o prevail on a claim involving choices between alternative courses of treatment, [an inmate] must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the inmate's] health.'" *Toguchi*, 391 F.3d at 1058 (citation omitted).

Haden fails to show a triable issue of fact in support of his claim that defendants were deliberately indifferent to his serious medical needs. The evidence is undisputed that: (1) on March 22, 2013, Dr. Espinoza examined Haden for chronic constipation and prescribed medication to treat his condition; (2) Haden's prescription for Konsyl expired in June 2013; (3) upon a follow-up examination on September 5, 2013, while being off Konsyl for more than two months, Haden showed no sign of severe constipation and appeared to Dr. Espinoza to be having normal bowel movements; (4) Dr. Espinoza continued Haden on his other two constipation medications, determined that he did not need Konsyl because he was not experiencing constipation without it (although she wrote a request for Konsyl to be approved as a non-formulary drug); and (5) Dr. Espinoza determined that a colonoscopy was unnecessary because Haden was not experiencing severe constipation, although a colonoscopy would be reconsidered later if Haden's severe constipation returned. The undisputed evidence also shows that Dr. Tootell (a) approved a non-formulary request for magnesium oxide for Haden on March 23, 2013; and (b) was not the

decision maker who denied the non-formulary request for Konsyl in September 2013. Given the undisputed fact that Haden was not exhibiting signs of constipation in September 2013 when he was seen by Dr. Espinoza, he has not shown that Dr. Espinoza was aware of facts from which the inference could be drawn that a substantial risk of harm existed if she did not prescribe Konsyl or refer him to a specialist for further testing, or that she drew that inference. Likewise, Haden has not shown that Dr. Tootell was deliberately indifferent to a serious medical need when she made her decisions regarding his care. Viewing the evidence and reasonable inferences therefrom in the light most favorable to Haden, no reasonable jury could find in his favor on his deliberate indifference claim.

At most, Haden has established that he disagreed with the medical decisions made by Dr. Espinoza and Dr. Tootell. However, a mere difference of opinion as to which medically acceptable course of treatment should be followed does not establish deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Where doctors have chosen one course of action and a prisoner-plaintiff contends that they should have chosen another course of action, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, . . . and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted). In September 2013, Haden wanted Konsyl as a treatment for his chronic constipation, but it is undisputed that his constipation was under control with just the lactulose and magnesium oxide. In other words, defendants were treating Haden's condition with other medications which they also continued to prescribe for him. Haden has not raised a triable issue of fact that the course of treatment chosen was medically unacceptable and chosen in conscious disregard of an excessive risk to his health.

Haden alleged that the defendants refused to renew his prescription for Konsyl "without a replacement/equal substitute" based solely on cost. Docket No. 5 at 3-3. Although Konsyl was a non-formulary item, that fact shows nothing about the price of Konsyl and there is simply no evidence in the record about the price of Konsyl. Haden has failed to raise a triable issue of fact because the undisputed evidence shows that defendants chose not to renew his prescription due to the absence of symptoms that warranted it, even though Dr. Espinoza put in a request for Konsyl

which she correctly anticipated would be rejected. Docket No. 19-4 at 18. No reasonable jury could conclude that defendants' refusal to renew Haden's prescription for Konsyl amounted to deliberate indifference when his constipation was then being controlled by other medications they did prescribe.

Haden also alleged that the defendants' delay or refusal to refer him to a specialist or a specialty clinic subjected him to substantial risk of serious harm. Docket No. 5 at 4-6. But the undisputed evidence shows that Haden did not report or show symptoms that would warrant a referral to a specialist. Moreover, the record shows that Dr. Espinoza did not permanently rule out a specialist, and decided instead to monitor the patient for symptoms that might warrant such a referral at a later time. Specifically, in March she observed that "previously, they were thinking about sending him to GI for consult, but that is not needed now," Docket No. 19-4 at 32, and in September observed that "there are no red flags. If he does seem to develop more significant symptoms can consider referring him for a colonoscopy." Docket No. 19-4 at 18. When he finally was referred out to a specialist for a colonoscopy in 2015, Haden's colon was normal, and the specialist made the same recommendations of increased dietary fiber and water that the doctors at San Quentin had made. No reasonable jury could conclude that defendants' refusal to refer Haden to a specialist in 2013 exposed him to a serious health risk, or that choosing to monitor him reflected deliberate indifference to a serious medical need.

When the evidence is viewed in the light most favorable to Haden, and inferences therefrom drawn in his favor, no reasonable jury could return a verdict for him and against defendants. Defendants therefore are entitled to judgment as a matter of law on the merits in their favor.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED. (Docket No.19.) Judgment will be entered in defendants' favor and against plaintiff.

**IT IS SO ORDERED.**

Dated: June 2, 2016

_____
SUSAN ILLSTON
United States District Judge